This is our first case in the morning, 410-0947, Spencer v. Long. For the appellant, Mr. Scherr, for the appellee, Mr. Justice, you may proceed. May it please the court. Good morning. My name is Chris Scherr. I'm with Giffen, Winning, Cohen & Wood Davis here in Springfield. I'm here on behalf of DeWitt County State's Attorney Richard Kortz. My firm has a contract with the State's Attorney Appellate Prosecutor's Office to help counties out in situations such as these. That explains my presence and why Mr. Kortz is here. They don't want anything to do with tax cases. I'll stop short of saying that. The case before you today, in our opinion, hinges on the court's interpretation of the phrase, unauthorized by law, as that phrase is used in the field of real estate taxation. At issue here are seven items of the DeWitt County 2010 tax levy that was passed in December of 2009. Plaintiffs filed a complaint for injunctive relief, including a few other counts. Those counts were dismissed on the grounds that the statutory tax objection procedure provided an adequate remedy to all DeWitt County taxpayers as to those issues. However, as to the seven levy items from DeWitt County, the trial court chose to enjoin the collection of $285,000 in real estate taxes. As a result of that injunction, the county treasurer, who was late behind her self-imposed timetable of getting the tax bills out, had to go back and regenerate new property tax bills in order to comply with the circuit court's order. You concede that the seven levies were improper, don't you? I'm sorry? You concede that the seven levies were improper? I would say that they were procedurally improper. I believe that this case is a matter of form over substance. That at the end of the day, all parties are in agreement, and even the trial court agreed, that these are lawful purposes for which taxes, real estate taxes, could be used. And in the taxpayer's brief on page 6, he acknowledges that the county, and I'll quote, Spencer does not assert the county board is without authority to tax real estate in DeWitt County. So the question is, what authority, and that's how plaintiffs have really distilled this issue down, is what authority does DeWitt County have to levy for those purposes? Our position is that the county's code, section 5-1024, grants them authority to levy taxes for these purposes so long as they do not exceed the statutory limit of 0.27%. I thought the trial court found it uncontroverted that the board had no authority to levy for those seven challenged items. The trial court did write that, yes. I think it's a matter of interpretation as to how that was uncontroverted. I think everyone agrees that there is no separate statutory authority that specifically says a county may levy taxes for, for example, the county audit fund purposes. That there is no separate statute in the county's code or the property tax code that says that a county may levy real estate taxes up to X number of dollars or X percentage of value for these purposes. Rather, they just simply say the county will provide these services and do these things and the county will pay for it. It doesn't, since the late 1980s, it's been silent as to how exactly the county should pay for it. And I outlined that in my brief, sort of the evolution of how these things, from my review, I think that came about that prior to the late 1980s, that there were separate statutory provisions that governed specifically each of these items saying that a county may levy taxes up to X percentage of value for this particular purpose. But in the late 1980s, the legislature sort of streamlined the taxing process and increased the general corporate levy rate while getting rid of some of these special tax items so that rather than have all these separate documents as what DeWitt County did here, rather than have all the separate documents, that it would just fall under one large umbrella. Our position is that that legislative change did not remove the county's authority to tax for those purposes. It just changed the manner in which they are to tax for those purposes. But can you exceed the general cap by adding on these special levies? No. No, that's impermissible. Would that have happened in this case? It did not happen in this case. How do we know? Well, of course, the tax was struck down. Well, Your Honor, the record reflects that including all these seven separate levies and aggregating those amounts to the county general corporate levy, that the rate was .2653 percent. That's the rate that would have been applied using the corporate rate of .2062 and then the seven special purposes. The trial court said these add-ons created a potential for mischief. Isn't that correct? Correct. And I would agree, there is potential for mischief there. But there was no mischief here, that it was below the statutory rate. And the county's code and the property tax code also, I believe, puts the county clerks of each county in sort of a watchdog position. They're the last line of defense that if some county were to be perhaps doing these things and potentially exceeding the statutory limit, it's the county clerk's responsibility in each county to ensure that that rate is not exceeded. In DeWitt County, just for background purposes, as we pointed out in our briefing as reflected by affidavits in the record, in DeWitt County, the county clerk typically would review all these levies, all the county's levy, and these special, these separate challenged items. They would impute them towards their general corporate rate. And historically, if the aggregate rate of those eight line items, from an accounting perspective, if those eight line items were to exceed the corporate rate, then the county clerk would lower the general corporate number so that at the end of the day, those aggregate amounts would not exceed the statutory limit. I think that's a good safety net. The mischief is that the people who do the appropriation of the levy, all of them ought to know this, too. In the sense that the mischief that the judge seems to be, the trial judge is suggesting in a county where nobody's paying attention and you don't know whether it could happen in successive years depending on practices, this could simply be a way to, I don't even mean intentionally, but could be a way to stiff the taxpayers simply because there's not, you're relying exclusively on the county clerk. And if you've got a practice that's historical, and I don't know that it would be smaller counties necessarily, but where, well, this is the way we do things, it goes by. And it could happen in successive years without anybody noticing. Perhaps. But if it's unintentional, I'm not sure I would characterize it as mischief. I think it would be more of just a breakdown of the system. Well, that's why it's interesting that you say that the levies were procedurally improper. It is the very process that we're talking about, the process by which these monies are levied and collected. And that process suggests that the reform or change of the law said, figure out what you need and levy it. And don't nickel and dime in specific areas that aren't specifically authorized. I mean, I thought that's what those guys were doing across the street. I would agree. But I think you hit the nail on the head when you said procedurally. That's the essence of our argument that the unauthorized by law exception to the exclusive procedure set out by the property tax code for a tax objection complaint, you pay your taxes, you protest them, and if there was something wrong, you get a refund. It's an exception to the unauthorized by law exception where it allows equity to intervene and bypass that procedure. That hinges on the lack of authority to impose taxes, not merely the procedure of imposing those taxes. And I recognize that's a fine distinction to make, and I recognize that the Supreme Court of Illinois in a 4-3 decision, I mean, obviously if it wasn't a fine distinction to make, it would have been more of a consensus, I think. But I think the Millennium Park decision that the Supreme Court issued underscores that this case is not an unauthorized by law case. It's about the procedure of doing what the county can lawfully do. That if it turns out that they did it improper, the recourse by individual taxpayers is not in equity. It's not by way of injunction. Each individual taxpayer has a right to show up in court, file a tax objection complaint, and complain about those procedural irregularities. So we should have had 1,000 lawsuits in court instead of one? Correct. Or even worse, only 500. And the other 500 people don't know what's going on. That could happen. And right now in DeWitt County on those cases that were dismissed, there are roughly 400 plaintiffs in court with cases pending, with matters pending. Maybe that's the mischief. That's part of the mischief. I mean, that's not a very good use of the process, to require the alert individual taxpayer to file this tax protest when all the tax protest is going to say, where in the hell did this come from? What levy is this? That's the process that the legislature gave us, though. That's what we have. But this tax is unauthorized by law, isn't it? No, the county assessors of each county are authorized by law to assess and tax all property not exempted from taxation. But that's not what you did here. You specifically included a levy for seven items that were not allowed, which you were not allowed to impose a specific levy on. I view the county's levy as a singular act. It's the sum of all of its parts. And whether the county did eight documents for these eight different items, whether they did 20, if they split out something else and levied, used separate levy documents, for example, like an ambulance tax or something else. But the law used to say you could levy on these specific items. The law was changed. The general rate was increased. The seven items were wiped out. You can't do it. It's no longer authorized by law to levy on these specific items. I think what that means is that the levy may be invalid. It may make the taxes invalid. That when somebody files a tax objection complaint and objects to what happened here, that maybe the court would rule in their favor. I don't think that that expands it within the unauthorized by law exception.  You didn't like it when the Supreme Court said that, that you could get an injunction when the tax was unauthorized by law. That's been the law for a long time. I noticed you quickly said that was only a four-to-three decision. Well, the four-to-three decision, I think that just shows how the Supreme Court wrestled with the unauthorized by law doctrine. In that case, there was a property that was leased by the Chicago Park District that was taxed. The taxpayer filed a request for declaratory and injunctive relief. The majority determined that that was unauthorized by law because the property was exempt from taxation. The dissenting justices looked at it slightly differently, believing that the issue was the assessor's decision to tax the property and how to classify it, which, if that's what the issue was, then it would be appropriate to go through the tax objection procedure. We think taxpayer here clearly challenges only the validity of the tax as levied, which is insufficient to invoke the unauthorized by law exception. The Commonwealth Edison case that we cited in our brief said that the phrase, the meaning of unauthorized by law, is that there are words of art that go to the question of the power of the assessor to function and not to the validity of the tax as levied. We freely acknowledge that there are lots of questions as to the validity of the tax as levied. But it's our position that it is undisputed that the assessor had the power to function, that the assessor had the power to assess all real estate in DeWitt County that's not exempt from taxation. Well, I guess it is the merits, but that power now is restricted to that which you decide is needed at the corporate level. I mean, that's one way. It is a semantic argument. It is a nice distinction, but it's a distinction courts are called upon to make all the time. True. And Judge Carroll said, that's the distinction I'm making. I've got a reason for it. I've got legislative action from the past and the change in this coupled with what I'm viewing as the mischief rule or the potential for mischief, and that's what I'm going to do. And it's a nice distinction, but why should we fall on your side of the distinction? Well, when you look at the power of the assessor to function, I think you have to take a broader – take a step back and take a broader look at how the taxing process works in Illinois. You have the left – let me back up. At the very beginning, the assessors and township assessors and county assessors list and assess all real estate, and they go through the valuations. If there's an increase in assessment, they send out the notice to the taxpayer. So they're involved in setting – fixing the value. Based on that value, the taxing bodies, once they determine – they determine how much money they need to operate in the upcoming fiscal year, and that levy goes to the county clerk. And then the county clerk, based on what the assessment authorities have done in doing – valuing the properties, the county clerk then determines what rate needs to be applied to raise the amount of funds that the taxing districts need. So by stepping back, with the unauthorized by law phrase, meaning that it has to call into question the power of the assessor to act, that takes it a step back beyond the levy, two steps back from the imposition of the tax. The question is, can the assessor make this subject – make this real estate subject to taxation? And in the – I thought it was a real interesting case. We mentioned it a little bit in our brief, but we discussed it more before the trial court. It's in our appendix at A-79, the R.D. Warner County versus Layton Fire Protection District. It's a 1980 case from the 1st District. There were parcels of property that were annexed into villages and disconnected from a fire protection district by operation of law. The taxpayers were being double-taxed for duplicative services. They had the fire protection district and the municipal fire department both taxing, both providing services. They claimed that those taxes from the fire protection district were unauthorized by law, that they should not have been taxed because they were disconnected by operation of law. The appellate court in that case said that the disconnection of most of plaintiff's property from the Layton district did not remove the power to tax, although defendants' continued taxation constituted an improper or irregular extension of taxes. They said that regardless of the irregularity of the taxes, they were not unauthorized within the narrow meaning of that term. So I think that that principle would apply to this case as well, that unauthorized by law is a very narrowly construed term, and you look at whether – the only question is whether the assessor can assess the real estate and can that real estate be taxed. What is it you want us to do in this case? We would ask that the case be remanded with instructions from the trial court to dismiss count one. Isn't this all moot? Hasn't the tax been imposed? It's not moot. The county requested the taxes. They levied for the taxes. They asked for the taxes. The county collector was given that information after it went through the county clerk. It was the county collector, the treasurer, who was enjoined from doing these things. There's no judgment against the county. The county still has these bills. The county still needs the money to pay the things that these taxes were to fund. So if the county is – the court's decision here will determine for the county what options are available to the county to recoup those funds. Thank you. Thank you. Judge Carroll pointed out that the mischief occurred eight out of ten times in the preceding ten years. The clerk using – I thought he said that you said that. Okay. You're right. But that's what the county clerk did, is had to knock back the county levy, the general levy, to accommodate these illegal levies. The judge also pointed out his fear that the truth in lending law would be secretly bypassed. And so he had good reason to do this. Adding to that is the separate people from the plaintiff on the counts that were dismissed. So not only do you have a county which is levying without statutory authority – remember, that's the issue before you. Did the county board have statutory authority to issue the levy? That's the only issue. Not whether or not the county clerk had the right to send out tax bills. That's not the issue before you. And the judge only enjoined the issuance of the tax bills because the county board didn't have the statutory authority. And as Justice Cox has pointed out, nobody has cited any authority, and I believe that Mr. Scheer conceded there was no statutory authority for the levy itself. Now, in addition to this, this same county is accumulating funds. And the judge took for granted – no, took for the sake of our argument in count one that with regard to some of these funds, they were 15, 16 times what they needed. In other words, they were accumulating funds beyond what the Supreme Court has said is allowed, which is two times your need plus the current need, unless you have a specified plan. So now we have a county board that is levying to accumulate funds in certain funds that may be 15 times – in other words, they've got an accumulation of 15 times what they are spending on an annual basis. So as a taxpayer, you may find yourself paying $40, $50, $100, $500. In the case of the largest taxpayer, $250,000 is being – is alleged to have been levied improperly and set aside in a local bank. And I believe that the policy – those two policies put together raise the level of scrutiny that this judge looked at. And maybe that's why he came up with the phrase, mischievous conduct. Do you suggest – does the record show that these potentially up to 15 times what should be? Was that related to these seven levies, or was that in other levies? So that mischief doesn't – you can't separate that. He thinks the county is doing something. Part of the record shows maybe the county is doing something that somebody else is going to complain about in the future. And in addition, there's this extra wrinkle of these seven, from your perspective, unauthorized levies. They are distinct. I agree with that. Distinct improprieties. And the issue on our appeal, which was the dismissal of the accumulation levies, is that Judge – and it's right back to this same phrase that Mr. Scherer started – unauthorized by law. Judge Carroll said, if the county board has a statute that authorizes the levy, then the only remedy is taxpayer protest. Our position at trial, and our position before you, is that unauthorized levies can also be unauthorized by the Supreme Court. And the Supreme Court has made it very clear since 1974 that it cannot, as a taxing authority, accumulate beyond the two multiple. And so we suggested to Judge Carroll that that was the unauthorized levy based upon the Supreme Court precedent, and he said he didn't feel that that was correct. He didn't specifically say this, but my guess is that he took the position that taxation is a statutory creature, and therefore if they have the statutory authority, I'm not going to enjoy it, simply because the Supreme Court has said there is a level at which the right to exercise your levy goes away. If the evidence – this was all in the pleading stage, and it was everyone – I mean, we've alleged enough facts in our complaint that everyone just assumed those facts to be true, and then we had an argument. So we didn't get a chance to present to you the supporting evidence, but the judge assumed for the sake of argument that we were correct, that the multiples were extraordinary in terms of the needs. I think in one of the highway funds, they were spending $300,000 or $400,000 a year, and they already had $2 million in the bank, and they wanted the levy again, and keep piling up the money. And I believe, for example, that we intended to present evidence from the county board finance chairman that said his intention was to live off the interest. That was what he was trying to do. And so the issue before you in our opinion is, does the words of the Supreme Court, which are very clear and very mathematically clear, make something unauthorized by law? And this precise issue – I cannot find this precise issue has ever been litigated. There are accumulation cases that come up on the taxpayer level, but there's never been, so far as I can find, an accumulation case where there was sought an injunction and the precise issue was, is the pronouncement of the Supreme Court in Millard make something unauthorized by law, according to the cases that are before you in this issue. That's what I have to say unless somebody has questions. Wouldn't Mr. Spencer have been satisfied to have followed the remedy by law, just to pay the taxes under protest and sought a refund? If satisfaction is that you pay taxes, not that your tax bill be reduced by $14? Yes. If the satisfaction you seek is to have your elected officials follow the law? Well, so he's really trying to bring a lawsuit on behalf of all the citizens of the county. Isn't that improper? The answer is no, if what they do is without statutory permission. If the county board acts – I guess it's no different than the county board allowing toxic waste without a permitting process. You have to follow the procedures in order to get what you want as a governmental entity. You only act by virtue of the powers granted to you. And if you don't follow those powers, then you can't do what you want. And I think I cited to you a case where the Supreme Court said that there is some basis in which citizens have the right to do this. Procedurally, where do you think we are? If we agree with you on levies, there's an appeal and a cross-appeal. What relief do you seek today? I would ask you to reverse the denial of the injunction and send it back and tell the judge to proceed to trial on the issue of our request for injunction and require us to prove that the accumulations did occur. I mean, we're a long way from proving that. I'm just alleged that it took place. And he said, well, I don't care if you're alleged to or not, even if it's true or not, you can't win an injunction. You have to go through the taxpayer – the tax bill test procedure. And he said, because the levy power to do a highway tort fund is in the statute and they have the right to levy for those. And our position is that the law has been modified or restricted by the Supreme Court's opinion. And Judge Carroll just didn't feel like – he felt like, I have to let the counties levy if they have a statute. And the Miller process is only for taxpayer protests. And if I were a Supreme Court justice, I would say, I think my board is as good as the legislature. Justice Cox, I don't know if you finished your question or not, otherwise I'm done. Thank you. Thank you. Justice Cook, I think you hit the nail on the head there. The plaintiff in this case fancies himself as a champion of all taxpayers in DeWitt County. Nobody else asked him to do this. No other taxpayer was joined as a plaintiff in this case. It wasn't certified as a class. This isn't a class action case. It was only Mr. Spencer before the court. I cited – I apologize for doing this. It's one of my self-imposed rules. I hate using too many block quotes. But in my reply brief, I thought that that was – that just seemed to be the right thing to do because there were some older cases that seemed to develop that point better than I could by just paraphrasing and slapping a few quotes together. They seemed to speak directly on that issue. So it's our position that effective jurisdiction was properly exercised by the trial court. And if the property tax code, section 2340, didn't apply to allow the county to amend its levies, that the circuit court nonetheless was wrong in granting class-wide relief, issuing an injunction county-wide, because that's the reason that relief from an invalid levy would have been available to all county taxpayers under the statutory procedures. I think if you look at the history of cases, the line of cases on the unauthorized by law exception, in those cases where it was found that injunctive or declaratory relief was appropriate apart from the statutory procedure, I think most of those cases you will find that they didn't – that the courts in those cases did not paint with such a broad brush, that they were focused and concerned solely with the taxpayers that were before them. I can't think of which case it was, but I know that there was one that concerned class action certification. I apologize, it's on the tip of my tongue. I know I'm relatively certain it's not. My court here said he didn't see how he could enjoin the actions of the county as to one taxpayer. Well, to be double-deficit, Your Honor, I think it's somewhat offensive to think that one person can gum up the entire administration of county government and assert rights on behalf of people who have no connection to them. There might be people out there that are content with the way things are. They may have looked at, oh, that's just a procedural error. That's fine, I'll pay my taxes. What right does he have to step in the shoes of every taxpayer in DeWitt County? The way the property tax code is set up by the legislature that prohibits class action, allows for mass enjoinder of plaintiffs, that just can't be the law in Illinois, that one person, one individual can show up, get an injunction, and that's the mischief. That's the mischief in this case. Mr. Justice said that I conceded that there's no statutory authority for the levy. Again, maybe this is semantics, but we believe that Section 5-1024 of the county's code provides the authority for these levies. Whether it's one document under the heading general corporate levy, or if the county were to choose to break it up into 200 documents covering each individual purpose for which they are levying, that's the source of the authority. And if all, let's say it broke it up into 200 separate documents, if the aggregate of those 200 documents did not exceed the statutory cap, the statutory rate of .27%, we believe that would be proper. I also wanted to point the court to the Wood River case that was cited in my brief, where taxpayers, it's a 5th district case from 2002, where the taxpayers claimed that levies were unauthorized by law, and the appellate court found that there was an adequate remedy of law, that the school district had statutory authority to issue bonds, that there was statutory authority to levy taxes to pay for those bonds, and there the taxpayer claimed that the bonds were illegal, notwithstanding the fact that they were not illegal and that they were properly issued. It was not a coverable, unauthorized by law thing. I see that my time is about up. I'd be happy to answer any further questions. I don't think we have anything. We'll take the matter under advice.